## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**WILLIAM HENRY LANGHORNE**

           **Plaintiff,**

**v.**                                                    **Case No.: 3:05cv336/MCR/EMT**

**FIREMAN'S FUND INSURANCE COMPANY,**

           **Defendant.**

_____/

## O R D E R

           Plaintiff William Henry Langhorne ("plaintiff") sues defendant Fireman's Fund Insurance Company ("defendant") alleging breach of contract for insurance coverage.[1] Presently before the court are the parties' cross motions for summary judgment (docs. 21, 23),[2] on which the court heard oral argument April 19, 2006. As explained below, the motions are granted in part and denied in part.

**BACKGROUND**

           Except as noted, the parties do not dispute the following facts.  Defendant insured plaintiff's residence located at 42 Star Lake Drive, Pensacola, Florida, under a homeowner's policy entitled "Prestige Home Premier Policy" ("the policy") for a one-year term which commenced March 19, 2004.[3]  Inter alia, the policy provides coverage limits of

---

[1]           The instant case was initiated in state court and removed to this federal forum by defendant on the basis of diversity jurisdiction on September 2, 2005.  (Doc 1).

[2]           The parties have filed numerous documents in support of and in opposition to the respective motions for summary judgment. (Docs. 22, 24, 25,  30, 31, 32, 34, 37).

[3]           Homeowner Renewal Policy No. NZG 298 46 89. (Doc. 25, Exh. A).

$674,000.00 for the dwelling; $134,000.00 for "other structures"; $337,000.00 for personal property; and $202,000.00 for loss of use.   The policy also contains an "Extended Replacement Cost Coverage" ("ERCC") endorsement, which provides coverage up to an additional 100% of that available under the underlying policy.   Wind is a covered peril under the policy but flood is not.

On September 16, 2004, Hurricane Ivan made landfall along the Alabama/Florida coast, substantially damaging plaintiff's dwelling and destroying an outbuilding located on the premises.  The parties disagree as to whether the destruction of the outbuilding was caused by wind (and thus covered under the policy) or by flood (and thus not covered). The parties also disagree as to whether the dwelling was a total loss.  Additionally, there is a dispute over the cost to rebuild or repair the dwelling; plaintiff obtained a cost estimate of $1,871,275.00 for rebuilding but defendant asserts that repair costs amount only to $699,711.00.  In November 2005 plaintiff had the dwelling demolished and the debris removed at a cost of $25,600.00.  He has not constructed a new residence or outbuilding. Although reserving the right to dispute that the dwelling was a total loss,  defendant paid plaintiff the underlying dwelling policy limit of $674,000.00, less a 2% deductible of $13,480.00, for a net payment of $660,520.00.  It has paid plaintiff nothing for the loss of the outbuilding or for demolition.

In his complaint plaintiff asserts that he is due, and defendant has failed to pay by the deadline set by state authorities for settling Hurricane Ivan claims, the policy limits for the dwelling under the ERCC endorsement and for the outbuilding under the policy's underlying coverage.[4]   Plaintiff seeks as relief for defendant's alleged breach of the insurance contract[5] the amount of $792,624.00 plus prejudgment interest, a declaratory

---

[4]      The complaint also asserts that defendant has failed to meet its personal property and loss of use coverage obligations under the policy.  The parties indicated at oral argument, however, that plaintiff's personal property claim has been settled, as has his claim for loss of use (through August 2006).  The court therefore shall dismiss as moot the associated claims in this action.

[5]      Plaintiff also alleges that defendant breached its duty of good faith and fair dealing.  "Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005) (citing Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097 (Fla.App. 1st Dist. 1999).  "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." Id.

judgment, attorneys' fees, and costs.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 249. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252. The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"

Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis omitted).

## DISCUSSION

Primarily at issue in this breach of insurance contract case[6] is whether defendant is required to pay plaintiff the policy limits under the ERCC endorsement for the loss of or damage to plaintiff's dwelling and whether it is required to pay him the policy limits under both the underlying policy and the ERCC endorsement for the loss of the outbuilding.[7] Additionally at issue is plaintiff's assertion that he is entitled to payment for the cost to demolish the dwelling.

As an initial matter, the court considers defendant's contention that dismissal of this action without prejudice is warranted for plaintiff's failure to satisfy certain conditions precedent to filing suit which are set forth in the policy.  More specifically, defendant maintains that plaintiff failed to submit a contents inventory for his personal property claim, as required under General Policy Conditions, Section B.   In addition, defendant points to Property Conditions, Section E, which states that "[n]o action can be brought unless the policy provisions have been fully complied with . . . ."  (Doc. 25, Exh. A,  Policy Conditions Quick Reference Guide at 1-2, 6 of 8).  According to defendant, under these provisions plaintiff was obliged to comply with the contents inventory requirement before commencing the instant action.  Because he did not, defendant argues, the action should be dismissed as prematurely filed.

Under Florida law a "no action" clause in an insurance contract may operate as a condition precedent barring suit against the insurer until the insured complies with the relevant policy provisions.  See Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 304-5 (Fla. 4th  DCA 1995).  Where the plaintiff has failed to comply with policy requirements before filing suit, the proper remedy generally is an abatement or stay of the claim.  See Bierman v. Miller, 639 So.2d 627, 628 (Fla. 3d DCA 1994).

---

[6]        The elements of a breach of contract claim under Florid law are (1) a valid contract, (2) a material breach, and (3) damages.  See J.J. Gumberg Co. v. Janis Services, Inc., 847 So.2d 1048, 1049 (Fla. 4th DCA 2003).  Here, there is no dispute as to the existence of a valid contract; rather, the issues presented involve whether there is a material breach and damages.

[7]        Plaintiff does not assert a claim for extended replacement cost coverage on the outbuilding in his amended complaint but rather seeks to raise the claim in his motion for summary judgment.  Although defendant has not specifically referenced this claim in responding to plaintiff's motion the court shall address it.

Here, there is no dispute that subsequent to the filing of this case plaintiff provided defendant with the required contents inventory and that the parties have since settled plaintiff's personal property claim. The court shall assume that in paying this claim defendant did not waive the identified condition precedent.   Regardless, the court concludes that dismissal of this action would not be a proper remedy for failure to comply with the "no action" clause and that, in any event, there is no present need to abate or stay plaintiff's claims.  The court therefore proceeds to consideration of the issues before it.

Dwelling

Plaintiff acknowledges that Section B(2) of the ERCC endorsement[8] requires an insured to repair, rebuild, or replace his dwelling before the extended replacement cost coverage applies.  Plaintiff also acknowledges that he has taken none of these required steps.  He contends, however, that  Section B(2) of the policy is void because it conflicts with Florida's Valued Policy Law ("VPL"), Fla. Stat. § 627.702.[9]   Defendant concedes

---

[8]      Section B(2) of the ERCC endorsement provides in relevant part:

    B.  For this coverage to apply you agree to:

                                *****

    (2)  Repair or rebuild the Dwelling with equivalent construction on the resident premises, or, for no greater cost, buy or build a dwelling at another location. If you choose not to repair or replace, we will only pay you the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

Doc. 25, Exh. A, ERCC endorsement, # 125487.

[9]      In relevant part, § 627.702 provides:

    (1)(a) In the event of the total loss of any building, structure . . . the insurer's liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
                                ******
    (8) Any property insurer may, by an appropriate rider or endorsement or otherwise, provide insurance indemnifying the insured for the difference between the insurable value of the insured property at the time any loss or damage occurs, and the amount actually expended to repair, rebuild, or replace within this state, with new materials of like size, kind, and quality, such property as has been damaged or destroyed.

Fla. Stat. § 627.702.

arguendo, for the purpose of this claim only, that the dwelling is a total loss[10] and that repair costs exceed the underlying coverage limits.  Defendant argues that even in light of these concessions it has established that plaintiff is not entitled to more than the dwelling policy limits.   This is true, defendant submits, because the ERCC endorsement is consistent with the requirements of the VPL and the dwelling has not been repaired, as the endorsement requires in order to trigger coverage.

Defendant's position is correct.  Section (8) of the VPL specifically contemplates that a property insurer, by endorsement, may provide insurance which indemnifies the insured for the difference between the insured value of his property and the amount he "actually expends" to repair, rebuild, or replace the property following loss or damage.  The ERCC provision in plaintiff's policy does not offend the VPL.   Rather, it fully satisfies the requirements of Section (8): it is an endorsement which agrees to provide insurance to indemnify plaintiff in the event of loss or damage to his dwelling for the difference between the underlying policy limits and the amount he actually expends to repair, rebuild, or replace the dwelling. In the court's view, there is no conflict between the ERCC endorsement in the policy and the plain, unambiguous language of the VPL.  The court therefore concludes that because to date plaintiff has not "actually expended" any amount to repair, rebuild, or replace his dwelling, defendant has no obligation to pay him under the ERCC endorsement.[11]

For the reasons stated, the court therefore shall grant summary judgment in defendant's favor with respect to this claim.

---

[10]    A building is considered a "total loss" when it no longer retains its identity and the specific characteristics which define it as a building. See Lafayette Fire Ins. Co. v. Camnitz, 149 So.653 (Fla. 1933).

[11]    Plaintiff cites numerous cases, including the recently decided Mierzwa v. Florida Windstorm Underwriter's Association, 877 So.2d 774 (Fla. 4th DCA 2004), in support of his argument that the "repair or replace" provision of the ERCC endorsement is void because it conflicts with Florida's VPL. These cases are inapposite, however, because they either involve coverage which permits an insurer (rather than, as here, the insured) to make the election to repair or they only involve underlying coverage (rather than, as here, extended replacement cost coverage). See, e.g., Mierzwa v. Florida Windstorm Underwriter's Association, 877 So.2d 774 (Fla. 4th DCA 2004); Curo v. Citizens Fund Mutual Fire Insurance Co., 242 N.W. 713 (Minn. 1932); Stuyvesant Insurance Co. v. Driskill, 244 S.W. 2d 291 (Tex. Civ. App. 1951); Rutherford v. Royal Insurance Co., 12 F.2d 880 (4th Cir. 1926); Horn v. Atlas Assurance Society, 48 S.W.2d 675 (Ky. App. 1931); Myers v. Cincinnati Insurance Co., 561 N.E.2d 1060 (Ohio. App. 1989); Camden Fire Insurance Association of Camden, N.J., v. Reynolds, 79 S.W.2d 54 (Ark. 1935).

Case No. 3:05cv336/MCR/EMT

Outbuilding

_____Plaintiff argues that "[i]t is without dispute that the [outbuilding] was blown from its foundation" and is a total loss.  (Doc. 21 at 17).  According to plaintiff, policy limits therefore are due both under the underlying "other structures" coverage of the policy as well as under the ERCC endorsement, or $134,000.00 under each provision, less deductibles.  Defendant agrees that the outbuilding is a total loss but disputes the cause of its destruction; according to defendant, flood rather than wind destroyed the outbuilding and thus there is no coverage pursuant to the underlying policy.  Even if there were coverage because wind caused the loss, defendant submits that under the terms of the policy it would only be liable for the actual repair or replacement cost of the structure, not the policy limits of $134,000.00.  Furthermore, defendant argues, with respect to "other structures" such as plaintiff's outbuilding the VPL does not require payment of the policy limits regardless of the actual replacement value.

Plaintiff has submitted an affidavit and photographs in support of his contention that wind destroyed the outbuilding; defendant has done the same in support of its position that flood, at least in part, was responsible for the loss.  (See doc. 21, exh. 4; doc. 22; and doc. 25, exhs. A, C).  The cause of the loss is material to a determination of plaintiff's entitlement to recovery for the outbuilding.  Accordingly, the court finds there is a disputed issue of fact to be resolved by a jury as to whether wind or flood destroyed this structure.[12]

Additionally, if the finder of fact determines that wind caused the loss, and thus that defendant may be exposed to liability, there is a question of law as to whether the underlying policy limits of $134,000.00 are due or whether plaintiff's recovery would be limited to the actual cost to repair or replace the outbuilding. Section B(2) of the Policy Conditions Quick Reference Guide in part provides:

_____

[12]     The court does not accept defendant's argument that plaintiff should be estopped from arguing that the outbuilding was destroyed by wind because the contractor who estimated the cost to replace plaintiff's dwelling listed the outbuilding as having been destroyed by flood.  Even if the court imputed to plaintiff the contractor's apparent conclusion that the loss of the outbuilding was due to flood (which the contractor indicated by simply by placing a repair estimate of $3500.00 into a column marked "flood"), defendant has not demonstrated that the other elements of equitable estoppel under Florida law are present in this case.  See Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla.Dist.Ct.App. 2002) (stating that elements of equitable estoppel include  "(1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts;  (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it.").

> For the Dwelling and Other Structures, we will pay the lesser of the following:
>
> a.  The cost to repair or replace the damaged property, whichever is less as defined in **replacement cost**; or
>
> b.  The amount you actually spend to replace the damaged structure at an other location, excluding land values; or,
>
> c.  The limit of insurance for the damaged Dwelling or Other Structure . . . .
>
> If you choose not to repair or replace, we will only pay you the cost to repair or rebuild the damaged structure at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less.

(Doc. 25, Exh. A,  Policy Conditions Quick Reference Guide at 5 of 8) (emphasis in original).  The policy defines "replacement cost" for total losses as "the cost to replace damaged property with new property that is identical . . . ."  Id.

Per the express terms of the underlying policy for coverage of "other structures," defendant need only pay either the cost to repair or rebuild the outbuilding or the policy limits for loss due to a covered peril, whichever is less.[13]  Moreover, the VPL provides in pertinent part:

> (5)  This section does not apply . . . to coverage of an appurtenant structure or other structure or any coverage or claim in which the dollar amount of coverage available as to the structure involved is not directly stated in the policy as a dollar amount specifically applicable to that particular structure.

Fla. Stat. § 627.702.

The outbuilding in this case fits the definition of "appurtenant structure"  or "other structure."[14]  Furthermore, the amount of coverage available for the outbuilding is not

---

[13]     The only estimate in the record of the cost to replace the outbuilding, which was made by plaintiff's contractor, is $3500.00.  (See doc. 25, exh. A).

[14]     A thing is "appurtenant" to something else when it is necessarily connected with its use and enjoyment; it is appurtenant to land when it is by right used with the land for its benefit.  Black's Law Dictionary (5th ed. 1979); see also Tower House Condominium, Inc. v. Millman, 410 So.2d 926 (Fla. 3d DCA 1981) (citing Black's Law Dictionary).  Under the policy, "other structures" are described as those "on the **resident premises** set apart from the dwelling by a clear space or connected to the dwelling by only a fence, utility line or similar connection." (Doc. 25, Exh. A,  Prestige Home Premier policy, Quick Reference Guide at 5 of 21)

directly stated in the policy as a dollar amount specific to the outbuilding; rather, the coverage of $134,000.00 applies to all "other structures."[15]  Thus the provision of the policy limiting recovery for the outbuilding to actual replacement cost does not violate the VPL. Accordingly, based on the plain and unambiguous language of Section B, supra, the court concludes as a matter of law that in the event of loss from a covered peril plaintiff is entitled to the "other structures" policy limits of $134,000.00 for the outbuilding only if the cost of repair or replacement equals or exceeds that amount.  If the cost of repairing or replacing the outbuilding is less than $134,000.00, plaintiff's recovery is limited to the lesser figure.[16]

    Plaintiff also is not entitled to coverage under the ERCC endorsement for the loss of the outbuilding.  Section C of the ERCC endorsement provides that extended coverage for "other structures" is triggered only when coverage is increased for the dwelling.[17] Here, as discussed above, pursuant to the terms of the policy and consistent with the plain, unambiguous language of the VPL, there is no such increase in coverage due.

    In summary, with respect to plaintiff's claim for recovery for the loss of the outbuilding,  the court denies the parties' motions for summary judgment because there

―――――――――――――――――――

(emphasis in original).

[15]     The court also does not accept defendant's argument that plaintiff should be estopped from arguing that the outbuilding was destroyed by wind because the contractor who estimated the cost to replace plaintiff's dwelling listed the outbuilding as having been destroyed by flood.  Even if the court imputed to plaintiff the contractor's apparent conclusion that the loss of the outbuilding was due to flood (a notation he made simply by placing a repair estimate of $3500.00 into a column marked "flood"), defendant has not demonstrated that the other elements of equitable estoppel under Florida law are present in this case. See Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla.Dist.Ct.App. 2002) (stating that elements of equitable estoppel include  "(1) the party against whom estoppel is sought must have made a representation about a material fact that is contrary to a position it later asserts;  (2) the party claiming estoppel must have relied on that representation; and (3) the party seeking estoppel must have changed his position to his detriment based on the representation and his reliance on it.").

[16]     The court declines to accept defendant's contention that plaintiff waived his right to recover under the "other structures" coverage of the underlying policy because he failed to identify the replacement cost of the structure in his answers to defendant's interrogatories.  Defendant cites no authority in support of this proposition.  Furthermore, the court concludes that it may be reasonably inferred that if the outbuilding was destroyed by a covered peril for which defendant has refused to compensate plaintiff he has suffered damages. That inference is sufficient for plaintiff to survive a summary judgment motion in the absence of direct proof to the contrary, see Platel v. Maronda Homes, Inc., 423 So.2d 627 (Fla. 5th DCA 1982), even though there may remain a genuine issue as to the amount of damages sustained.

[17]     Section C of the ERCC endorsement states that "[w]hen we increase the limit of insurance for your Dwelling, the percentage of increase will also apply to the limit of insurance for "other structures," Personal Property, and Loss of Use, if applicable."  Doc. 25, Exh. A, ERCC endorsement, # 125487.

is a disputed issue of fact to be determined by a jury as to whether wind or flood destroyed the structure.  In addition, as a matter of law the court finds that plaintiff's recovery for the loss of the outbuilding due to a covered peril is limited to the actual cost to repair or replace the outbuilding.   The court also finds as a matter of law that plaintiff is not entitled to coverage under the ERCC endorsement for the loss of the outbuilding.

Demolition and Debris Removal Costs

Finally, plaintiff seeks payment under the policy for the $25,600.00 expense he incurred for the demolition of the dwelling, which he contends was a total loss.  For the purpose of this claim, defendant disputes that the dwelling was a total loss and, therefore, that demolition was necessary. Defendant also points out that under the terms of the policy, if the cost to demolish the dwelling and to repair it does not exceed the policy limits previously paid, no additional payment is owed.  Only if "the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability" will an additional 5% of the limit of liability be available to plaintiff for demolition/debris removal costs.  (Doc. 25, Exh. A,  Prestige Home Premier policy, Quick Reference Guide at 10 of 21).  In support of their relative positions, the parties have submitted evidence, primarily in the form of competing affidavits and reports of several experts, which addresses the issues of whether the dwelling was a total loss and the cost of repairing or rebuilding it.  (See doc. 21, exhs. 1-3; doc. 34; and doc. 32, exhs. 3B, 3C, 4A).  These disputed issues of fact are material to a determination of plaintiff's entitlement to recovery for expenses he incurred to demolish the dwelling and remove the debris. Accordingly, the court denies the parties' motions for summary judgment as to plaintiff's claim for demolition and debris removal costs.[18]

As a final matter, even though the parties have previously mediated this case without success, the court believes that additional mediation of plaintiff's claims that

---

[18]       The court denies defendant's motion to strike, on the ground of waiver, any claim by plaintiff for debris removal for the failure to assert the claim in his answers to interrogatories or to provide documentation of the cost in response to defendant's request for production.  As with defendant's waiver argument regarding the replacement cost of the outbuilding, defendant does not cite any legal authority in support of the contention that plaintiff should be deemed to have waived this claim.  In any event, assuming arguendo that the dwelling was a total loss, as plaintiff contends, and that defendant has failed to pay plaintiff demolition expenses which may be due under the policy, the reasonable inference arises that plaintiff has sustained damages.  Again, such an inference is sufficient for plaintiff to survive a summary judgment motion, absent direct proof otherwise.  See Platel, supra.

he is entitled to payment for the loss of his outbuilding under the underlying policy and for demolition/debris removal costs should be conducted.  Therefore, in compliance with instructions to be set forth by separate order, the parties shall mediate these claims a second time prior to trial, which is set for July 24, 2006.

It is therefore ORDERED:

1.      The parties motions for summary judgment (docs. 21, 23) are GRANTED in part and DENIED in part, as follows:

a.      Defendant's motion is GRANTED and plaintiff's motion is DENIED with respect to plaintiff's claims that he is entitled to Extended Replacement Cost Coverage under defendant's Homeowner Renewal Policy No. NZG 298 46 89 for the damage to or loss of his dwelling and outbuilding.  These claims are DISMISSED with prejudice.

b.      The parties' motions are DENIED with respect to plaintiff's claim that he is entitled to "other structures" coverage under the policy for the loss of his outbuilding.

c.      The parties' motions are DENIED with respect to plaintiff's claim that he is entitled to costs of demolition and debris removal under the policy.

2.      Plaintiff's claims for breach of contract brought in connection with the personal property and loss of use coverage under the policy are DISMISSED as moot.

3.      The parties shall mediate for a second time the claims listed above in Paragraph 1(b) and (c) in compliance with instructions to be set forth by separate order.

**DONE and ORDERED** this 26th day of May, 2006.


s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**